## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PETER SCHWENDTNER and ANIKO TAKACS,
Individually and as Co-Administrators of the Estate
of DORA BERNADETT SCHWENDTNER,
Deceased, and STEVEN G. WIGRIZER, as Co-
Administrator of the Estate of DORA BERNADETT
SCHWENDTNER, Deceased

16 Matyas K. UTCA
Mosonmagyarovar 9200
Hungary

18 Kiraly UT
Mosonmagyaróvár 9200
Hungary

115 South 21st Street
Philadelphia, PA  19103

And

SANDOR PREM and SANDORNE PREM,
Individually and as Co-Administrators of the Estate
of SZABOLCS PREM, Deceased, and STEVEN
GILLMAN, as Co-Administrator for the Estate of
SZABOLCS PREM, Deceased

11 Diofa  UTCA
Hansagliget, Hungary 9167

940 Public Ledger Building
620 Chestnut Street
Philadelphia, PA  19106

And

RUSSELL and JANETTE KEEN Keen, h/w
307 McClellan Road
Egg Harbor Township, NJ 08234

*Plaintiffs*

v.

No.  2:10-CV-05007-CMR

RIDE THE DUCKS OF PHILADELPHIA, LLC
d/b/a RIDE THE DUCKS
111 S. Independence Mall, Ste. 120
Philadelphia, PA 19106


And

RIDE THE DUCKS PHILADELPHIA
437 Chestnut Street
Suite 910
Philadelphia, PA 19106

And

RIDE THE DUCKS PHILLY
437 Chestnut Street
Suite 910
Philadelphia, PA 19106

And

RIDE THE DUCKS INTERNATIONAL LLC
One Penn Center
1617 JFK Boulevard
Suite 946
Philadelphia, PA 19103

And

RIVER DUCKS LLC
One Penn Center
1617 JFK Boulevard
Suite 946
Philadelphia, PA 19103

And

PHILLY DUCKS LLC
One Penn Center
1617 JFK Boulevard
Suite 946
Philadelphia, PA 19103

And

PENN DUCKS LLC
One Penn Center
1617 JFK Boulevard
Suite 946
Philadelphia, PA 19103

And

K-SEA TRANSPORTATION PARTNERS L.P.
One Tower Center Boulevard, 17th Floor
East Brunswick, NJ 08816

And

K-SEA TRANSPORTATION INC. d/b/a RIVER
ASSOCIATES
PA Naval Business Center
4700 Basin Bridge Road
Philadelphia, PA 19112

And

K-SEA GENERAL PARTNER LP
One Tower Center Boulevard, 17th Floor
East Brunswick, NJ 08816

And

K-SEA OPERATING PARTNERSHIP LP
One Tower Center Boulevard, 17th Floor
East Brunswick, NJ 08816

And

K-SEA GENERAL PARTNER GP LLC
One Tower Center Boulevard, 17th Floor
East Brunswick, NJ 08816

And

HERSCHEND FAMILY ENTERTAINMENT
CORPORATION d/b/a RIDE THE DUCKS
5445 Triangle Parkway, Ste. 200
Norcross, GA 30092

And

3

AMPHIBIOUS VEHICLE MANUFACTURING,
L.L.C.
2222 State T Highway
Branson, MO 65616

And

THE CITY OF PHILADELPHIA
Law Department
1515 Arch Street, 14th Floor
Philadelphia PA 19107

And

GARY FOX
22 Cricket Lane
Turnersville, NJ 08012

*Defendants*

## AMENDED COMPLAINT-CIVIL ACTION

### THE PARTIES

1.      Plaintiffs, Peter Schwendtner, Aniko Takacs, and Steven G. Wigrizer, are the Co-Administrators of the Estate of Dora Bernadett Schwendtner, deceased, having been duly appointed by the Register of Wills Office of Philadelphia County.

2.      Plaintiffs, Sandor Prem, Sandorne Prem, and Steven Gillman, are the Co-Administrators of the Estate of Szabolcs Prem, deceased, having been duly appointed by the Register of Wills Office of Philadelphia County.

3.      Plaintiff, Peter Schwendtner, is an adult individual and natural father of decedent Dora Bernadett Schwendtner, residing at 16 Matyas K. UTCA,

Mosonmagyaróvár 9200, Hungary and brings this action Individually and as Co-Administrator of the Estate of Dora Bernadett Schwendtner, deceased.

4.      Plaintiff, Aniko Takacs, is an adult individual and natural mother of decedent Dora Bernadett Schwendtner, residing at 18 Kiraly UT, Mosonmagyaróvár 9200, Hungary and brings this action Individually and as Co-Administrator of the Estate of Dora Bernadett Schwendtner, deceased.

5.      Plaintiff, Steven G. Wigrizer, is an adult individual with an office at 115 South 21st Street, Philadelphia, PA 19103 and brings this action as Co-Administrator of the Estate of Dora Bernadett Schwendtner, deceased.

6.      Plaintiff, Sandor Prem, is an adult individual and natural father of decedent Szabolcs Prem, residing at 11 Diofa UTCA Hansagliget, Hungary and brings this action Individually and as Co-Administrator of the Estate of Szabolcs Prem, deceased.

7.      Plaintiff, Sandorne Prem, is an adult individual and natural mother of decedent Szabolcs Prem, residing at 11 Diofa UTCA Hansagliget, Hungary and brings this action Individually and as Co-Administrator of the Estate of Szabolcs Prem, deceased.

8.      Plaintiff, Steven Gillman, is an adult individual with an office at 940 Public Ledger Building, 620 Chestnut Street, Philadelphia, PA 19106 and brings this action as Co-Administrator of the Estate of Szabolcs Prem, deceased.

9.     Plaintiffs, Russell and Janette Keen, h/w, are adult citizens of New Jersey residing at 307 McClellan Road Egg Harbor Township, NJ 08234.

10.     Defendant, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks (hereinafter referred to as "Ride the Ducks"), is a corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business and nerve center located at 111 S. Independence Mall, Ste. 120, Philadelphia, PA 19106 and which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania.

11.     At all relevant times herein, defendant, Ride the Ducks, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

12.     Defendant, Ride the Ducks Philadelphia, is a corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business and nerve center located at 437 Chestnut Street, Suite 910, Philadelphia, PA 19106 and which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania.

13.     At all relevant times herein, defendant, Ride the Ducks Philadelphia, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

14.    Defendant, Ride the Ducks Philly, is a corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business and nerve center located at 437 Chestnut Street, Philadelphia, PA 19106 and which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania.

15.    At all relevant times herein, defendant, Ride the Ducks Philly, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

16.    Defendant, Ride the Ducks International LLC (hereinafter referred to as "Ride the Ducks International"), is a corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business and nerve center located at One Penn Center, 1617 JFK Blvd., Suite 946, Philadelphia, PA 19103 and which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania.

17.    At all relevant times herein, defendant, Ride the Ducks International, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

18.    Defendant, River Ducks LLC (hereinafter referred to as "River Ducks"), is a corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business and nerve center

located at One Penn Center, 1617 JFK Blvd., Suite 946, Philadelphia, PA 19103 and which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania.

19.    At all relevant times herein, defendant, River Ducks, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

20.    Defendant, Philly Ducks LLC (hereinafter referred to as "Philly Ducks"), is a corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business and nerve center located at One Penn Center, 1617 JFK Blvd., Suite 946, Philadelphia, PA 19103 and which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania.

21.    At all relevant times herein, defendant, Philly Ducks, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

22.    Defendant, Penn Ducks LLC (hereinafter referred to as "Penn Ducks"), is a corporation or other business entity organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business and nerve center located at One Penn Center, 1617 JFK Blvd., Suite 946, Philadelphia, PA 19103 and which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania.

23.     At all relevant times herein, defendant, Penn Ducks, acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

24.     Some or all of the members of defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, and Herschend Family Entertainment Corporation d/b/a Ride the Ducks, are citizens of the Commonwealth of Pennsylvania.

25.     Defendant, K-Sea Transportation Partners, L.P., (hereinafter referred to as "K-Sea Transportation"), is a corporation or other business entity organized and existing under the laws of the State of Delaware with its principal place of business located at 1 Tower Center Boulevard, 17th Floor, East Brunswick, NJ 08816 and which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania.

26.     Defendant, K-Sea Transportation, purposefully established significant contacts in the Commonwealth of Pennsylvania and has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania and regularly conducts business in Philadelphia County, including marketing and selling its services and/or products in Pennsylvania and Philadelphia County.

27.     At all relevant times herein, defendant, K-Sea Transportation, was acting by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

9

28.     Defendant, K-Sea Transportation Inc. d/b/a River Associates, (hereinafter referred to as "River Associates") is a corporation or other business entity organized and existing under the laws of the State of Delaware or Commonwealth of Pennsylvania with its principal place of business located at PA Naval Business Center, 4700 Basin Bridge Road, Philadelphia, PA 19112 and which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania.

29.     Defendant, River Associates, purposefully established significant contacts in the Commonwealth of Pennsylvania and has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania and regularly conducts business in Philadelphia County, including marketing and selling its services and/or products in Pennsylvania and Philadelphia County.

30.     At all relevant times herein, defendant, River Associates, was acting by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

31.     Defendant, K-Sea General Partner LP, (hereinafter referred to as "K-Sea General Partner") is a corporation or other business entity organized and existing under the laws of the State of Delaware with its principal place of business located at One Tower Center Boulevard, 17th Floor, East Brunswick, NJ 08816 and which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania.

10

32.     Defendant, K-Sea General Partner, purposefully established significant contacts in the Commonwealth of Pennsylvania and has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania and regularly conducts business in Philadelphia County, including marketing and selling its services and/or products in Pennsylvania and Philadelphia County.

33.     At all relevant times herein, defendant, K-Sea General Partner, was acting by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

34.     Defendant, K-Sea Operating Partnership LP, (hereinafter referred to as "K-Sea Operating Partnership"), is a corporation or other business entity organized and existing under the laws of the State of Delaware with its principal place of business located at One Tower Center Boulevard, 17th Floor, East Brunswick, NJ 08816 and which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania.

35.     Defendant, K-Sea Operating Partnership, purposefully established significant contacts in the Commonwealth of Pennsylvania and has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania and regularly conducts business in Philadelphia County, including marketing and selling its services and/or products in Pennsylvania and Philadelphia County.

36. At all relevant times herein, defendant, K-Sea Operating Partnership, was acting by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

37. Defendant, K-Sea General Partner GP LLC, (hereinafter referred to as "K-Sea General Partner GP"), is a corporation or other business entity organized and existing under the laws of the State of Delaware with its principal place of business located at One Tower Center Boulevard, 17th Floor, East Brunswick, NJ 08816 and which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania.

38. Defendant, K-Sea General Partner GP, purposefully established significant contacts in the Commonwealth of Pennsylvania and has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania and regularly conducts business in Philadelphia County, including marketing and selling its services and/or products in Pennsylvania and Philadelphia County.

39. At all relevant times herein, defendant, K-Sea General Partner GP, was acting by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

40. Some or all of the members of defendants, K-Sea Transportation Partners L.P., K-Sea General Partner LP, K-Sea Operating Partnership LP and K-Sea General Partner GP LLC, are citizens of the State of New Jersey and the Commonwealth of Pennsylvania.

41.     Defendant, Herschend Family Entertainment Corporation, d/b/a Ride the Ducks, (hereinafter referred to as "Herschend Family Entertainment"), is a corporation or other business entity organized and existing under the laws of the State of Georgia with its principal place of business located at 5445 Triangle Parkway, Ste. 200, Norcross, GA 30092 and which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania.

42.     Defendant, Herschend Family Entertainment, purposefully established significant contacts in the Commonwealth of Pennsylvania and has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania and regularly conducts business in Philadelphia County, including marketing and selling its services and/or products in Pennsylvania and Philadelphia County.

43.     At all relevant times herein, defendant, Herschend Family Entertainment, was acting by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

44.     Defendant, Amphibious Vehicle Manufacturing, L.L.C. (hereinafter referred to as "Amphibious Vehicle Manufacturing"), is a corporation or other business entity organized and existing under the laws of the State of Missouri with its principal place of business located at 2222 State T Highway, Branson, MO 65616 and which at all times relevant herein engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania.

45.     Defendant, Amphibious Vehicle Manufacturing, purposefully established significant contacts in the Commonwealth of Pennsylvania and has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania and regularly conducts business in Philadelphia County, including marketing and selling its services and/or products in Pennsylvania and Philadelphia County.

46.     At all relevant times herein, defendant, Amphibious Vehicle Manufacturing, was acting by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

47.     Defendant Herschend Family Entertainment owns, operates, and manages family-oriented theme parks and attractions throughout the country, including Ride the Ducks, Stone Mountain Park, Talking Rocks Cavern, Adventure Aquarium in Camden, New Jersey, Newport Aquarium, Dollywood, Silver Dollar City, Wild Adventures, Dollywood Vacations, Evergreen Marriott Resort and Conference Center, Stone Mountain Inn, Stone Mountain Park, Camp Ground and Classic Cable Car Sightseeing.

48.     According to defendant's website, "Ride the Ducks is the nation's largest amphibious tour operator and amphibious vehicle manufacturer."

49.     In 2001, Ride the Ducks from Branson, Missouri, partnered with Herschend Family Entertainment in pursuit of national and international expansion.

50.     In 2003, Ride the Ducks of Philadelphia opened.

51.     In 2004, Herschend Family Entertainment became the sole owner of Ride the Ducks.

52.     In 2003, defendant, Amphibious Vehicle Manufacturing, a subsidiary of Ride the Ducks, manufactured Duck Boat 34.

53.     In 2006, Herschend Family Entertainment began producing a patented "truck duck" with a new and modern design. Duck Boat 34, manufactured in 2003 does not have that new and modern design.

54.     Defendant, City of Philadelphia is a municipality of the first class in the Commonwealth of Pennsylvania, organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1515 Arch Street, 14th Floor, Philadelphia, PA 19102, and has consented to being sued and is being sued pursuant to the provisions of 42 Pa. C.S.A. § 8542.

55.     At all times relevant to the present cause of action, defendant City of Philadelphia was acting by and through its agents, servants and/or employees who are acting within the course and scope of their agency, service and/or employment with defendant.

56.     At all relevant times, defendant City of Philadelphia owned, operated, possessed, maintained, and controlled a barge known as "The Resource" ("the barge").

57.     At all relevant times, the barge was a motor vehicle in the possession or control of defendant City of Philadelphia pursuant to 42 Pa.C.S.A. § 8542(b)(1).

58.     At all relevant times, the barge was in operation and motion.

59.     At all relevant times, defendant City of Philadelphia was responsible for the care, custody or control of waterway channel on the Delaware River, pursuant to 42 Pa.C.S.A. § 8542(b)(4) and (6).

60.     At all relevant times, the area of the river in which the accident took place was in a dangerous condition, of which defendant City of Philadelphia had or should have had knowledge.

61.     Defendant Gary Fox is an adult citizen of the State of New Jersey, residing at 22 Cricket Lane, Turnersville, NJ 08012. At all relevant times herein, Defendant Fox engaged in substantial, continuous, regular and systematic business in the County of Philadelphia, Commonwealth of Pennsylvania by working for Ride the Ducks of Philadelphia, LLC at their headquarters in Philadelphia.

62.     Defendant Gary Fox was working as a duck boat captain, in charge of operating Duck Boat 34, on July 7, 2010.

63.     All defendants are jointly and severally liable for the injuries, deaths, and damages described in this action.

## THE MISS MAJESTIC DUCK BOAT DISASTER

64.     On May 1, 1999, The Miss Majestic Duck Boat sank on Lake Hamilton Arkansas drowning 13 duck boat passengers.

65.     Defendants, Herschend Family Entertainment, Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International, River Ducks, Philly Ducks, Penn Ducks and Amphibious Vehicle Manufacturing had knowledge of that accident before July 7, 2010.

66.     On April 2, 2002, The National Transportation Safety Board ("NTSB") adopted and published a report entitled "Marine Accident Report Sinking of the Amphibious Passenger Vehicle Miss Majestic, Lake Hamilton, near Hot Springs, Arkansas, May 1, 1999."

67.     Defendants, Herschend Family Entertainment, Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International, River Ducks, Philly Ducks, Penn Ducks and Amphibious Vehicle Manufacturing had knowledge of the existence of the report and read it before the manufacture of Duck Boat 34, Patent #7351124.

68.     On February 18, 2000, the NTSB issued the following safety recommendations to operators of amphibious passenger vehicles in the United States:

> M-00-5 *"Without delay, alter your amphibious vessels to provide reserve buoyancy through passive means, such as watertight compartmentalization, built-in flotation, or equivalent measures, so that they will remain afloat and upright in the event of flooding, even when carrying a full complement of passenger and crew."*

69.     In December 1999, the NTSB held a public forum on amphibious passenger vehicle safety which was attended by members of the amphibious passenger vehicle industry and technical experts. According the NTSB Miss Majestic report, "[o]ne

major outcome of the forum was the realization by participants that amphibious vehicles pose unique and unresolved safety risks to the public, but that the vehicles could be made safe by installing safety features that would prevent them from sinking when flooded."

70.     The 2002 NTSB report found "unacceptable level of risks to passenger safety continue to exist in these vehicles…because the industry has failed to take voluntary action to address [the risk posed by lack of adequate reserve buoyancy]."

71.     The NTSB Miss Majestic report found that the overhead canopy over passengers' heads "essentially caged them" making escape in limited time available extremely difficult.  The report also concluded that "the natural buoyancy of passengers' bodies forced them into the overhead canopy, which acted like a net to entrap them and to prevent their vertical escape."

72.     The NTSB report concluded that the canopies present major safety risks…[especially since]…this unique vehicle is often promoted to and used by school groups.  The safety board therefore concludes that, on amphibious passenger vehicles that cannot remain afloat when flooded, canopies represent an unacceptable risk to passenger safety.

73.     Duck Boat 34 can not and could not remain afloat while flooded and is equipped with a canopy.

### THE JULY 7, 2010 TRAGEDY

74.     On July 7, 2010, Dora Bernadett Schwendtner and Szabolcs Prem were part of a group of Hungarian students visiting Philadelphia.

75.     On July 7, 2010, defendants, Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International, River Ducks, Philly Ducks, Penn Ducks and Herschend Family Entertainment marketed and sold to Dora Bernadett Schwendtner, Szabolcs Prem, and Russell and Janette Keen a tourist trip on the amphibious vehicle known as Duck Boat 34.  The tourist trip included a tour through the streets of Philadelphia followed by a cruise on the Delaware River.

76.     On July 7, 2010, Gary Fox was the Captain of Duck Boat 34 which was operating in the City of Philadelphia along its normal route.   Dora Bernadett Schwendtner, Szabolcs Prem, Russell and Janette Keen were passengers on the Duck Boat.

77.     According to published reports, Kyle Burkhardt, age 18, a trainee, was at the helm of the Duck Boat when it entered the river.

78.     U.S. Coast Guards Regulations required that Kyle Burkhardt be a U.S.C.G. licensed Captain (minimum 25-Ton license) to pilot the vessel on the Delaware River.

79.     There is no published or accessible public information indicating that Kyle Burkhardt had such a license.

80.     According to published reports Duck Boat 34, or other Duck Boats in the fleet, had exhibited symptoms of overheating at least 4 times before the date of the accident.

81.     On July 7, 2010, Duck Boat 34, piloted by trainee Kyle Burkhardt, entered the Delaware River.   After entering the river, the vehicle began exhibiting signs of overheating.

82.     According to published reports, Gary Fox used duct tape on the engine.

83.     According to published reports, Gary Fox voluntarily shut down the engines and dropped anchor, stranding the duck boat in a commercial shipping channel.

84.     The decision by the Duck Boat operator, to drop anchor from the stern in a busy commercial channel, made Duck Boat 34 a sitting duck without any ability to navigate or steer away from other vessels and impeding the vision of its crew and passengers.

85.     The operator of the Duck Boat decided to shutdown the engines although the boat was shutting down in an active commercial shipping lane typically used by container ships, barges, tankers, tugs and other vessels approaching or exceeding 300 feet in length.

86.     According to published eyewitness accounts, the Duck Boat operator radioed for assistance from a fellow Duck Boat first, rather than warn other river traffic of his decision to voluntarily shutdown his engines, destroying his ability to navigate.

87.     According to the Coast Guard, the operator of the Duck Boat did not contact the Coast Guard on its emergency channel, channel 16.

88.     According to published reports from eyewitnesses, the Duck Boat operator's order to put on personal flotation devices occurred shortly before impact, robbing many passengers in the Duck Boat from being able to safely don their personal flotation devices.

89.     In their website, Ride the Ducks, promised "a duck load of…modern safety equipment on board" but their engine broke down and they did not have an operable air horn, a vital maritime safety device.

### K-SEA TRANSPORTATION

90.     K-Sea Transportation is a major provider of marine transportation, and operates a large fleet of tug and tank barges that serve major oil companies.  It is one of the largest tank barge operators in the United States.

91.     K-Sea Transportation is and was the owner and operator of the Caribbean Sea, a 148 ton, 2400 horsepower tugboat with dimensions of 85 feet x 24 feet x 10 feet.

92.     On July 7, 2010, K-Sea Transportation tugboat, the Caribbean Sea, was pushing a 290-foot-long empty sludge barge, The Resource, upriver heading north approaching the Benjamin Franklin Bridge.

93.     The tugboat was lashed to the barge on the back port side and had a blind spot forward and starboard of the sludge barge for someone operating from the wheelhouse.

94.    K-Sea Transportation had a crew of five on the tugboat, a Captain, First Mate and three other crew members.  At the time of the accident, one of the three crew members was asleep.

95.    The sludge barge was empty and thus was riding high in the water.  The bow of the barge therefore obstructed the forward and starboard view from the wheelhouse.

96.    The owner of the Caribbean Sea, K-Sea Transportation, was aware that it did not have policy to post a lookout on barges when moving barges on the Delaware River.

97.    According to published reports at the time of the accident and leading up to the accident, the Captain had surrendered the wheel to the First Mate.

98.    According to the published reports, the First Mate was alone in the wheelhouse at the time of the accident.

99.    As the tugboat headed northbound, upriver, Duck Boat 34, one of the fleet of Duck Boats that regularly travel on the Delaware River entered the water from a designated launch ramp on the western shore of the river just south of the Benjamin Franklin Bridge.  After entering the Delaware River and proceeding east, the Duck Boat 34's engine exhibited signs of overheating and the operator of the Duck Boat shutdown the engine.

100.   According to witnesses, this occurred 10 to 15 minutes before the incident.

101.     The operator of the Duck Boat dropped anchor, to prevent the vehicle from drifting, but did so in an active shipping channel.

102.     The Duck Boat operator, prior to the collision, alerted vessels in the river, and particularly the tugboat and barge that they were without power and in distress through Marine Channel 13 or 16.

103.     Despite the fact that other vessels heard this distress call, no one on the tugboat heard or responded to the Duck Boat's distress call.  Thus, at the time of the incident, the tugboat was pushing a 290' barge upriver both blind and deaf, without caring what or whom they would run over or kill.

104.     K-Sea Transportation was aware that it did not have a written policy or procedure banning the person at the helm from taking personal phone calls on his cell phone while operating or prohibiting crew members from turning down the volume of the marine radio.

105.     The barge, being controlled by the tugboat, ran over the Duck Boat as shown in this photograph, pushing it beneath the water and causing it to flood and sink. See picture below.



106.    The passengers inside the Duck Boat were trapped inside the Duck Boat as it was pushed and flooded below the surface of the Delaware River.

107.    K-Sea Transportation has refused to publicly identify the Captain, the First Mate and other crew members that were aboard the tugboat, the Caribbean Sea.

108.    Rather than identifying the crew members, K-Sea Transportation has provided legal counsel to the crew members.

109.    After K-Sea Transportation supplied its crew members with attorneys, the Mate at the helm of the Caribbean Sea lawyered-up and refused to testify at the NTSB investigation, citing his Fifth Amendment right not to criminally implicate himself.

110.    The collision between the two vessels caused Dora Bernadett Schwendtner and Szabolcs Prem to become submerged beneath the waters of the Delaware River. They struggled and fought to resurface but they eventually were deprived of oxygen and suffered a horrific death by drowning.

111.    Dora Bernadett Schwendtner and Szabolcs Prem died a horrific agonizing death by drowning, alone in a foreign country without their parents in the murky dark waters of the river after fighting for and losing their lives.

112.    As a direct and proximate result of defendants' carelessness, negligence, gross negligence, recklessness and complete disregard for the welfare of other vessels, vessel safety, unseaworthiness of their vessels, and waterway navigation rules, two young Hungarian students, Dora Bernadett Schwendtner and Szabolcs Prem were killed when the tour boat was struck by a barge and sank in the Delaware River on July 7, 2010.

113.    In addition to the horrific deaths suffered by Dora Schwendtner and Szabolcs Prem, other passengers on Duck Boat 34, including Plaintiffs, Russell and Janette Keen, sustained serious and debilitating injuries.

114.    As a direct and proximate result of defendants' carelessness, negligence, gross negligence, recklessness and complete disregard for the welfare of other vessels, vessel safety, unseaworthiness of their vessels, and waterway navigation rules, plaintiffs Russell and Janette Keen, while passengers on Duck Boat 34, sustained serious and debilitating injuries.

## COUNT I – NEGLIGENCE

### PLAINTIFFS v. RIDE THE DUCKS OF PHILADELPHIA, L.L.C. d/b/a RIDE THE DUCKS, RIDE THE DUCKS PHILADELPHIA, RIDE THE DUCKS PHILLY, RIDE THE DUCKS INTERNATIONAL LLC, RIVER DUCKS LLC, PHILLY DUCKS LLC, PENN DUCKS LLC, HERSCHEND FAMILY ENTERTAINMENT CORPORATION d/b/a RIDE THE DUCKS AND GARY FOX

115.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

116.    Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Gary Fox, owed Dora Schwendtner, Szabolcs Prem, Russell and Janette Keen, a duty to act reasonably before conducting Duck Boat tours and to obey all waterway and boating rules while operating Duck Boats on the Delaware River.

117.    Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Gary Fox, breached that duty and proximately caused the deaths of Dora Bernadett Schwendtner and Szabolcs Prem and the suffering and debilitating injuries to Russell and Janette Keen.

118.    Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC,

River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Gary Fox, by and through their respective agents, servants, workmen and employees, were negligent, careless, grossly negligent and reckless both generally and in the following particular respects, all of which was within the privity and/or knowledge of defendants:

  a. Failing to implement policies, procedures and crew training to ensure passenger safety when the Duck Boats were operating in the Delaware River;

  b. Operating outside the Duck Boat's Coast Guard approved area;

  c. Failing to develop and implement sufficient safety procedures for emergency situations, including but not limited to, loss of power and abandon ship;

  d. Failing to have a policy prohibiting operation in commercial shipping channels;

  e. Failing to train their personnel how to properly operate in commercial shipping areas;

  f. Calling another Duck Boat on a private channel for assistance rather than notifying all vessels in the area of their condition first;

  g. Operating the boat in a careless and negligent manner;

  h. Failing to exercise reasonable care under all of the circumstances;

  i. Operating a vessel whose engine was in a known poor state of repair;

  j. Failing to carry coastguard-required safety equipment;

  k. Failing to have properly operating safety equipment on board;

  l. Failing to have a properly operating radio on board;

  m. Failing to use the radio in a prompt and proper manner;

  n. Failing to have a properly operating horn on board;

  o. Anchoring in a channel;

p.      Failing to move the boat out of the channel;

q.      Failing to restart the engine;

r.      Failing to distribute life jackets in a timely manner;

s.      Failing to ensure that all passengers put on their life jackets and that the jackets were properly secured;

t.      Failing to ensure that the captain and the crew were properly trained and licensed to operate the vessel;

u.      Failing to properly train the crew in the proper and safe operation of the vessel;

v.      Failing to use the proper radio channel;

w.      Permitting an unlicensed, untrained and/or unqualified individual to operate the Duck Boat;

x.      Failing to maintain the Duck Boat in a reasonable manner;

y.      Violating Inland Navigation Rules;

z.      Failing to recognize a risk to passenger safety in operating in a commercial shipping channel;

aa.      Failing to implement and/or follow standard operating procedures;

bb.      Failing to properly qualify the crew;

cc.      Failing to provide the fleet with effective safety policies and procedures;

dd.      Failing to properly oversee the fleet and/or crew;

ee.      Failing to correct conditions of unseaworthiness within their privity or knowledge;

ff.      Failing to have a competent crew piloting the vessel;

gg.      Failing to have a policy prohibiting operation in a commercial shipping channel;

hh.      Failing to train their personnel not to operate in commercial shipping areas;

ii.      Failing to have a seaworthy vessel that would remain afloat while flooded;

jj.     Allowing an 18 year old to pilot the vessel on the Delaware River;

kk.     Failing to implement policies and procedures as to the approved/permitted operating area;

ll.     Failing to train its crew regarding its approved/permitted operating area;

mm.     Failing to use means to attract attention of river traffic; and

nn.     Failing to issue a proper security call.

119.     By reason of the carelessness, negligence, gross negligence, reckless disregard and other liability producing conduct of Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Gary Fox, Dora Bernadett Schwendtner and Szabolcs Prem sustained fatal injuries. They have in the past suffered agonizing aches, pains and mental anguish; sustained a loss of earnings and a loss of earning capacity; sustained loss of enjoyment of life, loss of life's pleasures and loss of life's hedonic pleasures; as a result of their wrongful death, they have been prevented from performing all of their usual duties, occupations, recreational activities and avocations all to their and their beneficiaries' loss and detriment.

120.     By reason of the carelessness, negligence, gross negligence, reckless disregard and other liability producing conduct of defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks,  and Gary Fox, plaintiffs, Russell and Janette Keen, while passengers on Duck Boat 34, were

caused to sustain neck and back injuries, psychological, emotional, and mental pain and suffering, conscious fear, some of all of these injuries have required or will require psychiatric treatment, neurological surgery, and other rehabilitative and medical procedures. They have sustained and may continue to sustain a loss of earning capacity and out of pocket medical expenses, some or all of which may be permanent.

WHEREFORE, Plaintiffs demand judgment against defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), along with damages for delay in accordance with Pa.R.C.P. 238 and costs.

### COUNT II – VIOLATION OF GENERAL MARITIME LAW

**PLAINTIFFS v. RIDE THE DUCKS OF PHILADELPHIA, L.L.C. d/b/a RIDE THE DUCKS, RIDE THE DUCKS PHILADELPHIA, RIDE THE DUCKS PHILLY, RIDE THE DUCKS INTERNATIONAL LLC, RIVER DUCKS LLC, PHILLY DUCKS LLC, PENN DUCKS LLC, HERSCHEND FAMILY ENTERTAINMENT CORPORATION d/b/a RIDE THE DUCKS AND GARY FOX**

121.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

122.    As a direct and proximate result of carelessness, gross negligence, recklessness and complete disregard for the welfare of other boaters, unseaworthiness of their vessel, boating safety, and the Inland Navigation Rules by Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Gary Fox, Dora Bernadett Schwendtner and Szabolcs Prem were caused to

30

suffer a horrific agonizing death by drowning and Russell and Janette Keen were caused to sustain serious and debilitating personal injuries.

123.    Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Gary Fox, at all times material hereto, had a duty to exercise due care for the safety of Dora Bernadett Schwendtner, Szabolcs Prem, and Russell and Janette Keen, in the care, maintenance, operation, and navigation of the vessel which defendants owned and operated.

124.    The injuries and resulting deaths of Dora Bernadett Schwendtner and Szabolcs Prem were not caused or contributed by to any fault or negligence of plaintiffs but were caused solely by and due wholly to defendants' negligence, carelessness, recklessness, unseaworthiness of the vessels, and violation of navigation rules all of which were within the privity and/or knowledge of defendants.

125.    The injuries sustained by Russell and Janette Keen were not caused or contributed by to any fault or negligence of plaintiffs but were caused solely by and due wholly to defendants' negligence, carelessness, recklessness, unseaworthiness of the vessels, and violation of navigation rules all of which was within the privity and/or knowledge of defendant.

WHEREFORE, Plaintiffs demand judgment against Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC,

Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Gary Fox, for such damages as are permitted under the General Maritime Law of the United States and/or the laws of the State of Pennsylvania including interest, costs and attorneys' fees.

## COUNT III – VIOLATION OF INLAND NAVIGATION RULES

### PLAINTIFFS v. RIDE THE DUCKS OF PHILADELPHIA, L.L.C. d/b/a RIDE THE DUCKS, RIDE THE DUCKS PHILADELPHIA, RIDE THE DUCKS PHILLY, RIDE THE DUCKS INTERNATIONAL LLC, RIVER DUCKS LLC, PHILLY DUCKS LLC, PENN DUCKS LLC, HERSCHEND FAMILY ENTERTAINMENT CORPORATION d/b/a RIDE THE DUCKS AND GARY FOX

126.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

127.    Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Gary Fox, owed plaintiffs a duty to act reasonably and obey all the navigation laws of the United States including the Inland Navigation Rules, 33 U.S.C. 2001 *et. seq.,* when operating their vessel on the navigable waters of the United States.

128.    Defendants Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Gary Fox, breached the duty owed

to their passengers and thereby caused the deaths of Dora Schwendtner and Szabolcs Prem, and the debilitating injuries to Russell and Janette Keen by being negligent, careless, grossly negligent and reckless in the following particular respects all of which were within the privity or knowledge of defendants:

  a. By violating Rule 7 of the Inland Navigation Rules in that it failed to use all available means to ascertain if risk of collision exists.

  b. By violating Rule 8 of the Inland Navigation Rules in that it failed to take action to avoid a collision.

  c. By violating Rule 8 of the Inland Navigation Rules in that it anchored in a narrow channel.

  d. By such operating a vessel in complete disregard of the Inland Navigation Rules and such other regulations established to promote safe boating.

WHEREFORE, Plaintiffs demand judgment against Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Gary Fox, for such damages as are permitted under the Inland Navigation Rules and/or the laws of the Commonwealth of Pennsylvania including interest, costs and attorneys' fees.

## COUNT IV-STRICT PRODUCT LIABILITY

## PLAINTIFFS v. RIDE THE DUCKS OF PHILADELPHIA, L.L.C. d/b/a RIDE THE DUCKS, RIDE THE DUCKS PHILADELPHIA, RIDE THE DUCKS PHILLY, RIDE THE DUCKS INTERNATIONAL LLC, RIVER DUCKS LLC, PHILLY DUCKS LLC, PENN DUCKS LLC, HERSCHEND FAMILY ENTERTAINMENT CORPORATION d/b/a RIDE THE DUCKS AND AMPHIBIOUS VEHICLE MANUFACTURING

129.     Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth herein.

130.     Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks and Amphibious Vehicle Manufacturing, by and through their agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under §402(A) of the Restatement of the Law of Torts (Second) because:

     a.    Defendants are engaged in the business of designing, manufacturing, assembling, distributing, selling and/or supplying duck boats;

     b.    The duck boat involved in the plaintiffs' accident was marketed and placed in the general stream of commerce by defendants;

     c.    The duck boats were expected to and did reach users without substantial change in the condition in which they were designed, manufactured, assembled, distributed and/or sold;

     d.    The duck boats were designed, manufactured, assembled, distributed and/or sold in the defective condition for the reasons set forth below.

131.     Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks and Amphibious Vehicle Manufacturing, by and through their agents, servants, workers, contractors, designers,

assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under §402(A) of the Restatement of the Law of Torts (Second), by:

a.  Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

b.  Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous for its intended use;

c.  Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

d.  Failing to have adequate warnings/instructions on and/or with the duck boat;

e.  Failing to provide adequate warnings/instructions to the ultimate users of the product;

f.  Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features;

g.  Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

h.  Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices;

i.  Designing, manufacturing, assembling, selling, and/or supplying duck boats without incorporating therein the state of the art of the industry and the state of the art in the science and engineering;

j.  Designing, assembling, manufacturing, selling, supplying and distributing duck boats that lacked acceptable buoyancy;

k.  Designing, assembling, manufacturing, selling, supplying and distributing duck boats without following safety recommendations of the National Transportation Safety Board;

l.  Designing, assembling, manufacturing, selling, supplying and distributing duck boats in such a manner that passengers become entrapped within the canopy of the duck boat in the event of a collision or capsizing;

      m.    Designing, assembling, manufacturing, selling, supplying and distributing duck boats that were insufficient and/or unsafe for their intended use; and

      n.    Designing a CO2 fire suppression system that shuts off power to the vessel.

132.    By conducting themselves as stated, defendants' actions and/or in-actions were substantial factors, a factual cause and/or increased the risk of harm to the plaintiffs.

133.    The duck boats were not equipped at the time they left Defendants' possession and control with every element necessary to make them safe for their intended use, reasonably foreseeable uses, and reasonable foreseeable misuses.

134.    By reason of the breach of duties pursuant to §402(A) of the <u>Restatement of the Law of Torts (Second)</u> of defendants, by and through their agents, servants, workmen, contractors, suppliers, distributors and/or employees, Dora Bernadett Schwendtner and Szabolcs Prem were caused to sustain severe and traumatic personal injuries that caused their eventual deaths and Russell and Janette Keen were caused to sustain severe and traumatic personal injuries the effects of which may be permanent.

WHEREFORE, plaintiffs claim of defendants, jointly and severally, and each of them, a sum in excess of $75,000 in compensatory damages together with lawful interest, costs of suit, attorney's fees, and delay damages, and brings this action to recover same.

## COUNT V-NEGLIGENCE (PRODUCT DESIGN)

### PLAINTIFFS v. RIDE THE DUCKS OF PHILADELPHIA, L.L.C. d/b/a RIDE THE DUCKS, RIDE THE DUCKS PHILADELPHIA, RIDE THE DUCKS PHILLY, RIDE THE DUCKS INTERNATIONAL LLC, RIVER DUCKS LLC, PHILLY DUCKS LLC, PENN DUCKS LLC, HERSCHEND FAMILY

## ENTERTAINMENT CORPORATION d/b/a RIDE THE DUCKS AND AMPHIBIOUS VEHICLE MANUFACTURING

135.   Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint the same as if fully set forth herein.

136.   At all relevant times herein and material hereto, defendants manufactured, designed, distributed, sold, installed, supplied, and/or assembled the duck boat at issue.

137.   Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks and Amphibious Vehicle Manufacturing, by and through their agents, servants, workers and employees were jointly and severally careless, negligent, grossly negligent and/or reckless as follows, all of which was within the privity and knowledge of defendants:

    a.   Designing, assembling, manufacturing, selling, supplying and distributing a duck boat in a defective condition;

    b.   Designing, assembling, manufacturing, selling, supplying and distributing a duck boat that was unreasonably dangerous for its intended use;

    c.   Designing, assembling, manufacturing, selling, supplying and distributing a duck boat that was not safe for all of its intended and represented purposes;

    d.   Failing to have adequate warnings/instructions on and/or with the product;

    e.   Failing to provide adequate warnings to the passengers of the duck boat;

f.  Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features;

g.  Failing to incorporate safety recommendations an/or design recommendations by the National Transportation Safety Board following the 1999 Miss Majestic disaster discussed above;

h.  Designing, assembling, manufacturing, selling, supplying and distributing a boat that lacked appropriate safety devices, safety equipment, and/or buoyancy;

i.  Designing, manufacturing, assembling, selling, and/or supplying a boat without incorporating therein the state of the art of the industry and the state of the art in the science and engineering;

j.  Designing, assembling, manufacturing, selling, supplying and distributing a boat that was insufficient to protect passengers in the event of collision and/or capsizing;

k.  Designing, assembling, manufacturing, selling, supplying and distributing a boat with a fixed canopy that acted to entrap passengers in the event of a collision/capsizing;

l.  Designing, assembling, manufacturing, selling, supplying and distributing a boat without designing/incorporating proper means to escape the boat/vessel in the event of capsizing and/or collision;

m.  Designing, assembling, manufacturing, selling, supplying and distributing a boat that was insufficient and/or unsafe for its intended use;

n.  Failing to use stronger materials in the boat's frame, hull and/or canopy;

o.  Failing to properly test the boat in collision and/or capsizing conditions;

p.  Failing to ensure the boat had a watertight hull and/or extra/reserve floatation;

q.  Failing to perform or performing an improper safety analysis on the duck boat;

r.  Failing to analyze prior duck boat accidents and incorporate design changes to increase safety and prevent future injuries/deaths; and

s.  Failure to ensure the design of the duck boat was seaworthy.

138.   By reason of the carelessness, negligence, gross negligence and recklessness of defendants, Dora Bernadett Schwendtner and Szabolcs Prem were caused to sustain severe and traumatic personal injuries that caused their eventual deaths.

139.   By reason of the carelessness, negligence, gross negligence and recklessness of defendants, Russell and Janette Keen were caused to sustain severe and traumatic personal injuries some or all of which may be permanent.

140.   By conducting themselves as set forth above, defendants' acts and/or omissions were a substantial factor, a factual cause and/or increased the risk of harm of Dora Bernadett Schwendtner's and Szabolcs Prem's personal injuries that caused their eventual deaths.

141.   By conducting themselves as set forth above, defendants' acts and/or omissions were a substantial factor, a factual cause and/or increased the risk of harm of Russell and Janette Keen's personal injuries.

WHEREFORE, plaintiffs claim of defendants, jointly and severally, and each of them, a sum in excess of $75,000 in compensatory damages together with lawful interest, costs of suit, and delay damages, and brings this action to recover same.

### COUNT VI – OUTRAGEOUS CONDUCT (PUNITIVE DAMAGES)

### PLAINTIFFS v. RIDE THE DUCKS OF PHILADELPHIA, L.L.C. d/b/a RIDE THE DUCKS, RIDE THE DUCKS PHILADELPHIA, RIDE THE DUCKS PHILLY, RIDE THE DUCKS INTERNATIONAL LLC, RIVER DUCKS LLC, PHILLY DUCKS LLC, PENN DUCKS LLC, HERSCHEND FAMILY ENTERTAINMENT CORPORATION d/b/a RIDE THE DUCKS AND AMPHIBIOUS VEHICLE MANUFACTURING

142.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

143.    Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing blatantly ignored the safety and design recommendations of the National Transportation Safety Board following the 1999 Miss. Majestic disaster.

144.    Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing knew that the defective and dangerous condition of Duck Boat 34 posed a very high risk of serious bodily injury and/or death to passengers.

145.    Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing knowingly, willfully and intentionally failed to take proper and recommended action to make its duck boats safe for passengers.

146.    Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC,

River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing failed to incorporate the NTSB safety recommendations and safety designs to save money.

147. Defendants, Ride the Ducks of Philadelphia, L.L.C., d/b/a Ride the Ducks, Ride the Ducks Philadelphia, Ride the Ducks Philly, Ride the Ducks International LLC, River Ducks LLC, Philly Ducks LLC, Penn Ducks LLC, Herschend Family Entertainment Corporation d/b/a Ride the Ducks, and Amphibious Vehicle Manufacturing, put profits over people and exposed its passengers to unsafe conditions and hazards to improve their bottom line.

148. Defendants' conduct rises to the level of outrageous conduct by willfully and recklessly ignoring the known dangerous condition of the Duck Boat 34 which caused decedents' deaths.

149. Defendants acted in a willful, wanton and reckless disregard for the safety of its passengers.

150. This and other misconduct constituted outrageous, willful and/or wanton misconduct, and manifested a reckless indifference to the rights of others to support an award of punitive damages.

WHEREFORE, plaintiffs claim of defendants, jointly and severally, and each of them, a sum in excess of $75,000 in compensatory damages and punitive damages

together with lawful interest, costs of suit, and delay damages, and brings this action to recover the same.

## COUNT VII – ALTER EGO THEORY

### PLAINTIFFS v. RIDE THE DUCKS OF PHILADELPHIA, L.L.C. d/b/a RIDE THE DUCKS, RIDE THE DUCKS PHILADELPHIA, RIDE THE DUCKS PHILLY, RIDE THE DUCKS INTERNATIONAL LLC, RIVER DUCKS LLC, PHILLY DUCKS LLC, PENN DUCKS LLC, HERSCHEND FAMILY ENTERTAINMENT CORPORATION d/b/a RIDE THE DUCKS AND AMPHIBIOUS VEHICLE MANUFACTURING

151.   Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

152.   Defendants, Ride the Ducks of Philadelphia, LLC, Ride the Ducks Philadelphia, Ride the Ducks Philly, River Ducks, LLC, Philly Ducks, LLC, and Penn Ducks, LLC, are alter egos of each other and/or Ride the Ducks International, LLC and/or Herschend Family Entertainment Corporation.

153.   These defendants undercapitalized, failed to adhere to corporate formalities, and intermingled corporate and personal affairs.

154.   As a result of this relationship, Ride the Ducks of Philadelphia, LLC, Ride the Ducks Philadelphia, Ride the Ducks Philly, River Ducks, LLC, Philly Ducks, LLC, Penn Ducks, LLC, Ride the Ducks International, LLC, and Herschend Family Entertainment Corporation are jointly and severally liable to Plaintiffs herein for all damages caused by co-defendants.

155.    Moreover, the Defendants structured their corporations sharing Philadelphia Business Privilege License Numbers and utilizing ports only licensed to certain co-defendants.

156.    Plaintiffs therefore, seek recovery, jointly and severally, against those defendants and for all damages caused by those defendants.

WHEREFORE, plaintiffs claim of defendants, jointly and severally, and each of them, a sum in excess of $75,000 in compensatory damages and punitive damages together with lawful interest, costs of suit, and delay damages, and brings this action to recover the same.

## COUNT VIII – JOINT ENTERPRISE

### PLAINTIFFS v. RIDE THE DUCKS OF PHILADELPHIA, L.L.C. d/b/a RIDE THE DUCKS, RIDE THE DUCKS PHILADELPHIA, RIDE THE DUCKS PHILLY, RIDE THE DUCKS INTERNATIONAL LLC, RIVER DUCKS LLC, PHILLY DUCKS LLC, PENN DUCKS LLC, HERSCHEND FAMILY ENTERTAINMENT CORPORATION d/b/a RIDE THE DUCKS AND AMPHIBIOUS VEHICLE MANUFACTURING

157.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

158.    Pleading in the alternative, if such is necessary, Defendants Ride the Ducks of Philadelphia, LLC, Ride the Ducks Philadelphia, Ride the Ducks Philly, River Ducks, LLC, Philly Ducks, LLC, Penn Ducks, LLC, Ride the Ducks International, LLC, and Herschend Family Entertainment Corporation, are a joint enterprise. As a result of this relationship, Defendants, Ride the Ducks of Philadelphia, LLC, Ride the Ducks Philadelphia, Ride the Ducks Philly, River Ducks, LLC, Philly Ducks, LLC, Penn Ducks, LLC, Ride the Ducks International, LLC, and Herschend Family Entertainment

Corporation, are jointly and severally liable to Plaintiffs herein for all damages caused by any of them. These corporations share common ownership and are, in reality, operating as a corporate combine thereby subjecting them to enterprise entity theory or single entity theory liability.

159.   These defendants together and collectively had :

    a.   an agreement, express or implied, among the members of the group;

    b.   a common purpose to be carried out by the group;

    c.   a community of pecuniary interest in that purpose among the members; and;

    d.   an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

160.   Plaintiffs therefore seek recovery, jointly and severally, against those Defendants and for all damages caused by those Defendants.

WHEREFORE, plaintiffs claim of defendants, jointly and severally, and each of them, a sum in excess of $75,000 in compensatory damages and punitive damages together with lawful interest, costs of suit, and delay damages, and brings this action to recover the same.

## COUNT IX – NEGLIGENCE

### PLAINTIFFS v. K-SEA TRANSPORTATION PARTNERS L.P., K-SEA TRANSPORTATION INC., d/b/a RIVER ASSOCIATES, K-SEA GENERAL PARTNER LP, K-SEA OPERATING PARTNERSHIP LP AND K-SEA GENERAL PARTNER GP LLC

161.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

162.    Defendants, K-Sea Transportation Partners L.P., K-Sea Transportation, Inc., d/b/a River Associates, K-Sea General Partner LP, K-Sea Operating Partnership LP and K-Sea General Partner GP LLC, owed Dora Bernadett Schwendtner, Szabolcs Prem, and Russell and Janette Keen, a duty to act reasonably, ensure their vessel was seaworthy, develop and implement safety policies, procedures, and training, properly oversee its fleet, and obey all waterway and boating rules when operating the tug/barge on the Delaware River.

163.    Defendants, K-Sea Transportation Partners L.P., K-Sea Transportation, Inc., d/b/a River Associates, K-Sea General Partner LP, K-Sea Operating Partnership LP and K-Sea General Partner GP LLC, breached that duty and proximately caused the injuries to Russell and Janette Keen and the deaths of Dora Bernadett Schwendtner and Szabolcs Prem.

164.    Defendants, K-Sea Transportation Partners L.P., K-Sea Transportation, Inc., d/b/a River Associates, K-Sea General Partner LP, K-Sea Operating Partnership LP and K-Sea General Partner GP LLC, by and through its respective agents, servants, workmen and employees, was negligent, careless, grossly negligent and reckless both generally and in the following particular respects, all of which was within the privity and/or knowledge of defendants:

        a.    Failing to have a policy to ensure each vessel maintained a proper lookout by sight and hearing as well as by all available means so as to make full appraisal of the situation and of the risk of collision;

b.      Failing to maintain a proper and safe lookout for other boats;

c.      Failing to position the tug so that it would have a clear view of the river;

d.      Violating boating and waterway safety rules;

e.      Failing to follow the navigation rules as it pertains to operation of vessels on the Delaware River, including, but not limited to the Rules of the Road and the Inland Navigation Rules;

f.      Failing to observe safe boating precautions and procedures under all of the circumstances;

g.      Operating the tug in a careless and negligent manner;

h.      Failing to exercise reasonable care under all of the circumstances;

i.      Failing to monitor VHF Marine Radio Channel 13;

j.      Failing to monitor VHF Marine Radio Channel 16;

k.      Failing to heed radio warnings;

l.      Failing to have a properly operating radio on board;

m.      Failing to use the radio in a proper manner;

n.      Operating the tug and the barge at an excessive speed under the circumstances;

o.      Failing to have the tug or crew in a position where the crew could maintain a proper view by hearing and sight;

p.      Failing to properly operate in a narrow channel;

q.      Failing to hear the distress call before the collision;

r.      Operating the tug and the barge with a blind spot;

s.      Failing to have a vantage point on all sides so the operator of the tug could see what was happening on the river;

t.      Failing to post a lookout on the barge;

u.      Failing to see a disabled vessel on the water and stop in time to avoid the collision;

v.      Failing to ensure that the captain and the crew were properly
        trained and licensed to operate the vessel;

w.      Failing to properly train the crew in the proper and safe operation
        of the vessel;

x.      Failing to develop and implement policies and procedures for
        lookouts and/or maintaining proper sightlines when pushing a
        barge;

y.      Failing to develop and/or implement policies and train crew
        members not to take personal phone calls on their cell phone while
        operating the tugboat;

z.      Failing to implement policies prohibiting crew members from
        turning down the volume of the marine radio;

aa.     Reducing crew personnel to an unsafe level;

bb.     Failing to have proper size tugboat;

cc.     Failing to institute policies and procedures for collision avoidance
        and proper reaction to disables vessels;

dd.     Failing to properly maintain and/or monitor all radar and
        navigation systems;

ee.     Colliding with and running over the Duck Boat;

ff.     Failing to implement and/or follow standard operating procedures;

gg.     Failing to properly qualify the crew;

hh.     Failing to provide the fleet with effective safety measures;

ii.     Failing to properly oversee the fleet and/or crew;

jj.     Failing to correct conditions of unseaworthiness within their
        privity or knowledge;

kk.     Failing to have a competent crew piloting the vessel;

ll.     Failing to implement a policies requiring lookouts when the view
        from the wheelhouse had a blind spot; and

mm.     Failing to post a camera or other means to ensure proper visibility.

165.    By reason of the carelessness, negligence, gross negligence, reckless disregard and other liability producing conduct of defendants, Dora Bernadett Schwendtner and Szabolcs Prem sustained fatal injuries.  They have in the past suffered agonizing aches, pains and mental anguish; sustained a loss of earnings and a loss of earning capacity; sustained loss of enjoyment of life, loss of life's pleasures and loss of life's hedonic pleasures; as a result of their wrongful death, they have been prevented from performing all of their usual duties, occupations, recreational activities and avocations all to their and their beneficiaries' loss and detriment.

166.    By reason of the carelessness, negligence, gross negligence, reckless disregard and other liability producing conduct of defendants, plaintiffs Russell and Janette Keen, while passengers on Duck Boat 34, were caused to sustain neck and back injuries, psychological, emotional, and mental pain and suffering, conscious fear, some of all of these injuries have required or will require psychiatric treatment, neurological surgery, and other rehabilitative and medical procedures.  They have sustained and may continue to sustain a loss of earning capacity and out of pocket medical expenses, some or all of which may be permanent.

WHEREFORE, plaintiffs claim of defendants, jointly and severally, and each of them, a sum in excess of $75,000 in compensatory damages together with lawful interest, costs of suit, and delay damages, and brings this action to recover same.

### COUNT X – VIOLATION OF GENERAL MARITIME LAW

### PLAINTIFFS v. K-SEA TRANSPORTATION PARTNERS L.P., K-SEA TRANSPORTATION INC., d/b/a RIVER ASSOCIATES, K-SEA GENERAL PARTNER LP, K-SEA OPERATING PARTNERSHIP LP AND

## K-SEA GENERAL PARTNER GP LLC

167.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

168.    As a direct and proximate result of carelessness, gross negligence, recklessness and complete disregard for the welfare of other vessels, vessel safety, unseaworthiness of its vessel, and the Inland Navigation Rules by Defendants, K-Sea Transportation Partners L.P., K-Sea Transportation, Inc., d/b/a River Associates, K-Sea General Partner LP, K-Sea Operating Partnership LP and K-Sea General Partner GP LLC, Dora Bernadett Schwendtner and Szabolcs Prem were caused to suffer horrific, agonizing deaths by drowning.

169.    Defendants, K-Sea Transportation Partners L.P., K-Sea Transportation, Inc., d/b/a River Associates, K-Sea General Partner LP, K-Sea Operating Partnership LP and K-Sea General Partner GP LLC, at all times material hereto, had a duty to exercise due care for the safety of other vessels in the policies, care, maintenance, operation, and navigation of the vessel which defendants owned and operated.

170.    The injuries and resulting deaths of Dora Bernadett Schwendtner and Szabolcs Prem were not caused or contributed by to any fault or negligence of plaintiffs, but were caused solely by and due wholly to defendants' negligence, unseaworthiness of its vessels, violation of navigation rules, carelessness, and recklessness.

171.    The injuries of Russell and Janette Keen wed not caused or contributed by to any fault or negligence of plaintiffs, but was caused solely by and due wholly to

defendant's negligence, unseaworthiness of its vessels, violation of navigation rules, carelessness, and recklessness

WHEREFORE, plaintiffs claim of defendants, jointly and severally, and each of them, damages as are permitted under the General Maritime Law of the United States and/or the laws of the State of Pennsylvania including interest, costs and attorneys' fees.

### COUNT XI – VIOLATION OF INLAND NAVIGATION RULES

**PLAINTIFFS v. K-SEA TRANSPORTATION PARTNERS L.P., K-SEA TRANSPORTATION INC., d/b/a RIVER ASSOCIATES, K-SEA GENERAL PARTNER LP, K-SEA OPERATING PARTNERSHIP LP AND K-SEA GENERAL PARTNER GP LLC**

172.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

173.    Defendants, K-Sea Transportation Partners L.P., K-Sea Transportation, Inc., d/b/a River Associates, K-Sea General Partner LP, K-Sea Operating Partnership LP and K-Sea General Partner GP LLC, owed plaintiffs' decedents a duty to act reasonably and obey all the navigation laws of the United States, including the Inland Navigation Rules, 33 U.S.C. 2001 *et. seq.,* when operating its vessel on the navigable waters of the United States.

174.    Defendants, K-Sea Transportation Partners L.P., K-Sea Transportation, Inc., d/b/a River Associates, K-Sea General Partner LP, K-Sea Operating Partnership LP and K-Sea General Partner GP LLC, breached the duty owed to plaintiffs' decedents' and thereby caused the deaths of Dora Bernadett Schwendtner and Szabolcs Prem and injuries to Russell and Janette Keen, by being negligent, careless, grossly negligent and reckless

in the following particular respects all of which were within the privity or knowledge of

defendants:

    a.    By violating Rule 5 of the Inland Navigation Rules in that it failed to maintain a proper lookout by sight and hearing so as to make a full appraisal of the situation and risk of collision.

    b.    By violating Rule 6 of the Inland Navigation Rules in that it failed to proceed at a safe speed so as to take proper care and effective actions to avoid collision.

    c.    By violating Rule 7 of the Inland Navigation Rules in that it failed to use all available means to ascertain if risk of collision exists.

    d.    By violating Rule 8 of the Inland Navigation Rules in that it failed to take action to avoid a collision.

    e.    By violating Rule 12 of the Inland Navigation Rules in that it failed to keep out of the way of Duck Boat 34 in order to avoid collision.

    f.    By violating Rule 13 of the Inland Navigation Rules in improperly overtaking a vessel.

    g.    By violating Rule 14 of the Inland Navigation Rules in that it failed to alter its course in order to avoid collision.

    h.    By violating Rule 16 of the Inland Navigation Rules in failing to keep clear of the vessel

    i.    By violating Rule 18 by failing to keep out of the way of a vessel

    j.    By operating a vessel in complete disregard of the Inland Navigation Rules and such other regulations established to promote safe boating.

WHEREFORE, plaintiffs claim of defendants, jointly and severally, and each of them, a sum in excess of $75,000 in compensatory damages together with lawful interest, costs of suit, and delay damages, and brings this action to recover same.

## COUNT XII – OUTRAGEOUS CONDUCT (PUNITIVE DAMAGES)

## PLAINTIFFS v. K-SEA TRANSPORTATION PARTNERS L.P., K-SEA TRANSPORTATION INC., d/b/a RIVER ASSOCIATES, K-SEA GENERAL PARTNER LP, K-SEA OPERATING PARTNERSHIP LP AND K-SEA GENERAL PARTNER GP LLC

175.     Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

176.     Defendants, K-Sea Transportation Partners L.P., K-Sea Transportation, Inc., d/b/a River Associates, K-Sea General Partner LP, K-Sea Operating Partnership LP and K-Sea General Partner GP LLC, improper oversaw its fleet and/or operated its vessel in blatant violation of safe navigation rules, regulations and laws.

177.     Defendants, K-Sea Transportation Partners L.P., K-Sea Transportation, Inc., d/b/a River Associates, K-Sea General Partner LP, K-Sea Operating Partnership LP and K-Sea General Partner GP LLC, knowingly, willingly and intentionally failed to comply with federal regulations, proper fleet oversight, safe boating rules and laws regarding vessel and crew safety requirements despite defendant's knowledge that these violations involved a substantial probability of death or serious physical harm.

178.     Defendants, K-Sea Transportation Partners L.P., K-Sea Transportation, Inc., d/b/a River Associates, K-Sea General Partner LP, K-Sea Operating Partnership LP and K-Sea General Partner GP LLC, failed to comply with these requirements to save money.

179.     Defendants, K-Sea Transportation Partners L.P., K-Sea Transportation, Inc., d/b/a River Associates, K-Sea General Partner LP, K-Sea Operating Partnership LP

and K-Sea General Partner GP LLC, put profits over people and exposed occupants of other vessels to a very high risk of serious bodily injury and/or death.

180.    Defendants' employee, who was piloting the vessel, engaged in conduct so outrageous that he refused to testify at an NTSB interview citing his 5th Amendment right against self-incrimination.

181.    Defendants' conduct rises to the level of outrageous conduct by willfully and recklessly ignoring the imminently dangerous and hazardous situation which resulted in a collision with Duck Boat 34 and caused the deaths of Dora Schendtner and Szabolcs Prem, and the serious injuries to Russell and Janette Keen.

182.    Defendants' conduct rises to the level of outrageous conduct and demonstrates reckless indifference to the interest of the public, including plaintiffs.

183.    Defendants acted in a willful, wanton and reckless disregard for the safety of other vessels.

184.    This and other misconduct constituted outrageous, willful and/or wanton misconduct, and manifested a reckless indifference to the rights of others to support an award of punitive damages.

WHEREFORE, plaintiffs claim of defendants, jointly and severally, and each of them, a sum in excess of $75,000 in compensatory damages and punitive damages together with lawful interest, costs of suit, and delay damages, and brings this action to recover same.

## COUNT XIII – NEGLIGENCE

### PLAINTIFFS v. CITY OF PHILADELPHIA

185.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

186.    Defendant City of Philadelphia owed Dora Bernadett Schwendtner, Szabolcs Prem, and Russell and Janette Keen, a duty to ensure that the barge in its possession and control was operated safely.

187.    At all times relevant herein and material hereto, defendant, City of Philadelphia, is liable pursuant to 42 Pa.C.S.A. §8542(b)(1).

188.    At all times relevant herein and material hereto, defendant, City of Philadelphia, is liable pursuant to 42 Pa.C.S.A. §8542(b)(3) and 42 Pa.C.S.A. §8542 (b)(6).

189.    Defendant, City, breached its duty by and through its agents, servers, workers, and/or employees, and was careless and negligent, by and in the following respects:

> a.    Failing to conduct legally required safety inspections;
>
> b.    Failing to supervise operations of the barge;
>
> c.    Failing to exercise due care under all of the circumstances;
>
> d.    Failing to ensure safe boating precautions and procedures were observed under all of the circumstances;
>
> e.    Failing to employ and select only qualified and competent individuals/corporations to operate the barge;
>
> f.    Failing to implement and/or follow standard operating procedures;

g.  Permitting an unlicensed, untrained and/or unqualified individual to operate the barge;

h.  Failing to ensure that the captain and the crew were properly trained and licensed to operate the barge;

i.  Failing to ensure that policies and procedures for collision avoidance and proper reaction to disabled vessels were implemented.

j.  Failure to ensure all City-owned barges have a lookout;

k.  Colliding with the Duck boat;

l.  Failing to ensure the Delaware River shipping channel was safety for tour operations;

m.  Failing to ensure proper water traffic flow in the Delaware River shipping channel;

n.  Permitting Duck Boat tours to operate in a commercial shipping channel; and

o.  Failure to contractually require a lookout on all city-owned barges.

190.  By reason of the carelessness, negligence, gross negligence and recklessness of defendant, Dora Bernadett Schwendtner and Szabolcs Prem were caused to sustain severe and traumatic personal injuries that caused their eventual deaths.

191.  By reason of the carelessness, negligence, gross negligence, reckless disregard and other liability producing conduct of defendant, plaintiffs Russell and Janette Keen, while passengers on Duck Boat 34, were caused to sustain severe and traumatic personal injuries as discussed more fully in the preceding paragraphs of this complaint.

192.  By conducting themselves as set forth above, defendant's acts and/or omissions were a substantial factor, a factual cause and/or increased the risk of harm of

Dora Bernadett Schwendtner's and Szabolcs Prem's personal injuries that caused their eventual deaths.

193.     By conducting themselves as set forth above, defendant's acts and/or omissions were a substantial factor, a factual cause and/or increased the risk of harm of plaintiffs Russell and Janette Keen.

WHEREFORE, plaintiffs claim of defendants, jointly and severally, and each of them, a sum in excess of $75,000 in compensatory damages together with lawful interest, costs of suit, and delay damages, and brings this action to recover same.

## COUNT XIV – WRONGFUL DEATH (BENEFICIARIES OF DORA SCHWENDTNER)

### PLAINTIFFS, PETER SCHWENDTNER AND ANIKO TAKACS, INDIVIDUALLY AND AS CO-ADMINISTRATORS OF THE ESTATE OF DORA BERNADETT SCHWENDTNER, DECEASED AND STEVEN G. WIGRIZER, CO-ADMINISTRATOR OF THE ESTATE OF DORA BERNADETT SCHWENDTNER, DECEASED v. ALL DEFENDANTS

194.     Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

195.     Dora Bernadett Schwendtner is survived by her natural father, Peter Schwendtner and her natural mother, Aniko Takacs.

196.     By reason of the death of Dora Bernadett Schwendtner, her beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including, but not limited to, loss of support, loss of aid, loss of services, loss of companionship, and comfort, loss of counseling and loss of guidance.

197.    As a direct and proximate result of the foregoing, decedent's wrongful death beneficiaries incurred or have been caused to incur and pay large and various expenses for medical treatment, hospital care and medicine rendered to decedent until the time of her death and to incur various funeral, burial and estate and administration expenses for which plaintiffs are entitled to compensation in this proceeding.

198.    Plaintiffs, Peter Schwendtner and Aniko Takacs, as representatives of Dora Bernadett Schwendtner, deceased, previously brought suit against certain defendants named herein, Philadelphia County Court of Common Pleas, docket number 1008001284. This Complaint was filed to add parties and causes of action. A Motion to Consolidate these actions will be filed with the Court.

199.    Plaintiffs, as Co-Administrators of the Estate of Dora Bernadett Schwendtner, bring this action by virtue of the Wrongful Death Act, 42 Pa.C.S.A. §8301, and Pa.R.C.P. 2202, and claim all benefits and recoverable damages under the Wrongful Death Act on behalf of all other persons entitled to recover under law.

WHEREFORE, plaintiffs demand that judgment be entered in favor of the wrongful death beneficiaries and against defendants, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in compensatory damages, punitive damages, and delay damages pursuant to Pa. R.C.P. 238, interest and allowable costs of suit.

### COUNT XV - SURVIVAL ACT (ESTATE OF DORA BERNADETTE SCHWENDTNER)

### PLAINTIFFS, PETER SCHWENDTNER AND ANIKO TAKACS, INDIVIDUALLY AND AS CO-ADMINISTRATORS OF THE ESTATE OF DORA BERNADETT SCHWENDTNER, DECEASED AND STEVEN G. WIGRIZER,

## CO-ADMINISTRATOR OF THE ESTATE OF DORA BERNADETT
## SCHWENDTNER, DECEASED v. ALL DEFENDANTS

200.     Plaintiffs incorporate herein by reference all preceding paragraphs f this Complaint the same as if fully set forth hereinafter.

201.     Plaintiffs claim on behalf of the Estate of Dora Bernadett Schwendtner all damages suffered by the estate by reason of the death of Dora Bernadett Schwendtner, including without limiting the generality of the following: the severe injuries to Dora Bernadett Schwendtner, which resulted in her drowning death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Dora Bernadett Schwendtner suffered prior to her death; the loss of future earning capacity suffered by Dora Bernadett Schwendtner from the date of her death until the time in the future that she would have lived had she not died as a result of the injuries she sustained; the loss and the total limitation and deprivation of her normal activities, pursuits and pleasures from the date of her death until such time in the future as she would have lived had she not died as a result of the injuries sustained by reason of the carelessness, recklessness, strict liability, negligence and gross negligence of defendants.

202.     Plaintiffs bring this action on behalf of the estate of Dora Bernadett Schwendtner, deceased, by virtue of the Survival Act, 42 Pa.C.S.A. §8302, and claim all benefits of the Survival Act on behalf of Dora Bernadett Schwendtner's estate, and other persons entitled to recover under law.

WHEREFORE, plaintiffs, as Co-Administrators of the Estate of Dora Bernadett Schwendtner, deceased, demand that judgment be entered in favor of the Estate of Dora Bernadett Schwendtner, against defendants, jointly and/or severally, in an amount in

excess of Seventy-Five Thousand Dollars ($75,000.00), in compensatory damages, punitive damages, and delay damages pursuant to Pa. R.C.P. 238, interest and allowable costs of suit.

## COUNT XVI – WRONGFUL DEATH (BENEFICIARIES OF SZABOLCS PREM)

**PLAINTIFFS, SANDOR PREM AND SANDORNE PREM INDIVIDUALLY AND AS CO-ADMINISTRATORS OF THE ESTATE OF SZABOLCS PREM, DECEASED AND STEVEN GILLMAN, AS CO-ADMINISTRATOR OF THE ESTATE OF SZABOLCS PREM, DECEASED v. ALL DEFENDANTS**

203.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

204.    Szabolcs Prem is survived by his natural father, Sandor Prem, and his natural mother, Sandorne Prem.

205.    By reason of the death of Szabolcs Prem, his beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including, but not limited to, loss of support, loss of aid, loss of services, loss of companionship,  and comfort, loss of counseling and loss of guidance.

206.    As a direct and proximate result of the foregoing, decedent's wrongful death beneficiaries incurred or have been caused to incur and pay large and various expenses for medical treatment, hospital care and medicine rendered to decedent until the time of his death and to incur various funeral, burial and estate and administration expenses for which plaintiffs are entitled to compensation in this proceeding.

207.    Plaintiffs, Sandor Prem and Sandorne Prem, as representatives of Szabolcs Prem, deceased, previously brought suit against certain defendants named herein, Philadelphia County, Court of Common Pleas filed under docket number 1008001284. This Complaint was filed to add parties and other causes of action.   A Motion to Consolidate these actions will be filed with the Court.

208.    Plaintiffs, as Co-Administrators of the Estate of Szabolcs Prem, bring this action by virtue of the Wrongful Death Act, 42 Pa.C.S.A. §830l, and Pa.R.C.P. 2202, and claim all benefits and recoverable damages under the Wrongful Death Act on behalf of all other persons entitled to recover under law.

WHEREFORE, plaintiffs demand that judgment be entered in favor of the wrongful death beneficiaries and against defendants, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in compensatory damages, punitive damages and delay damages pursuant to Pa. R.C.P. 238, interest and allowable costs of suit.

## COUNT XVII - SURVIVAL ACT (ESTATE OF SZABOLCS PREM)

### PLAINTIFFS, SANDOR PREM AND SANDORNE PREM INDIVIDUALLY AND AS CO-ADMINISTRATORS OF THE ESTATE OF SZABOLCS PREM, DECEASED AND STEVEN GILLMAN, AS CO-ADMINISTRATOR OF THE ESTATE OF SZABOLCS PREM, DECEASED v. ALL DEFENDANTS

209.    Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

210.    Plaintiffs claim on behalf of the Estate of Szabolcs Prem all damages suffered by the Estate by reason of the death of Szabolcs Prem, including without

60

limiting the generality of the following: the severe injuries to Szabolcs Prem, which resulted in his death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Szabolcs Prem suffered prior to his death; the loss of future earning capacity suffered by Szabolcs Prem from the date of his death until the time in the future that he would have lived had he not died as a result of the injuries he sustained; the loss and the total limitation and deprivation of his normal activities, pursuits and pleasures from the date of his death until such time in the future as he would have lived had he not died as a result of the injuries sustained by reason of the carelessness, strict liability, recklessness, negligence and gross negligence of defendants.

211.    Plaintiffs bring this action on behalf of the Estate of Szabolcs Prem, deceased, by virtue of the Survival Act, 42 Pa.C.S.A. §8302, and claim all benefits of the Survival Act on behalf of Szabolcs Prem's estate, and other persons entitled to recover under law.

WHEREFORE, plaintiffs, as Co-Administrators of the Estate of Szabolcs Prem, deceased, demand that judgment be entered in favor of the Estate of Szabolcs Prem, against defendants, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), in compensatory damages, punitive damages, and delay damages pursuant to Pa. R.C.P. 238, interest and allowable costs of suit.

## COUNT XVIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFF RUSSELL KEEN V. ALL DEFENDANTS

212.    Plaintiff incorporates herein by reference all preceding paragraphs of this complaint as if fully set forth hereinafter.

213.    Plaintiff, Russell Keen, was a passenger on Duck Boat 34 at the time of its collision with the barge.

214.    In the moments leading up to the collision between the barge and Duck Boat 34, plaintiff, Russell Keen, was in the zone of danger and was placed in danger of, and actually suffered, physical injuries.

215.    After the collision, plaintiff, Russell Keen, was dragged under water with Duck Boat 34, whereupon he became trapped and was forced to swim through the murky waters of the Delaware River, fighting for his life.

216.    As a result of being forced to fight for his life in the Delaware River, plaintiff Russell Keen has, in addition to the physical injuries, which included orthopedic, neurologic and other injuries, suffered further injuries including but limited to: severe emotional distress, psychological pain and suffering, emotional scarring, mental anguish, and other debilitating psychological, emotional, and mental injuries, the full extent of which may not have yet been realized.

217.    Plaintiff Russell Keen was also present at the scene and witnessed a close family member, his wife Janette Keen, suffer injuries caused by defendants' conduct.

218.    Plaintiff Russell Keen suffered nausea, headaches, repeated hysterical attacks, insomnia, severe depression, nightmares, stress, nervousness, anxiety and/or other physical manifestations of emotion distress stemming from perceiving his wife's injuries.

WHEREFORE, plaintiff, Russell Keen, claims of defendants, jointly and severally, and each of them, a sum in excess of $75,000 in compensatory damages

together with lawful interest, costs of suit, and delay damages, and brings this action to recover same.

## COUNT XIX – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFF JANETTE KEEN V. ALL DEFENDANTS

219.    Plaintiff incorporates herein by reference all preceding paragraphs of this complaint as if fully set forth hereinafter.

220.    Plaintiff, Janette Keen, was a passenger on Duck Boat 34 at the time of its collision with the barge.

221.    In the moments leading up to the collision between the barge and Duck Boat 34, plaintiff, Janette Keen, was in the zone of danger and was placed in danger of, and actually suffered, physical injuries.

222.    After the collision, plaintiff, Janette Keen, was dragged under water with Duck Boat 34, whereupon she became trapped and was forced to swim through the murky waters of the Delaware River, fighting for her life

223.    As a result of being forced to fight for her life in the Delaware River, plaintiff Janette Keen has, in addition to the physical injuries, which include orthopedic, neurologic and other injuries, suffered further injuries including, but limited to, severe emotional distress, psychological pain and suffering, emotional scarring, mental anguish, and other debilitating psychological, emotional, and mental injuries, the full extent of which may not have yet been realized.

224.    Plaintiff Janette Keen was also present at the scene and witnessed a close family member, her husband Russell Keen, suffer injuries caused by defendants' conduct.

225.    Plaintiff Janette Keen suffered nausea, headaches, repeated hysterical attacks, insomnia, severe depression, nightmares, stress, nervousness, anxiety and/or other physical manifestations of emotion distress stemming from perceiving her husband's injuries.

WHEREFORE, plaintiff, Janette Keen, claims of defendants, jointly and severally, and each of them, a sum in excess of $75,000 in compensatory damages together with lawful interest, costs of suit, and delay damages, and brings this action to recover same.

## COUNT XX – LOSS OF CONSORTIUM

## PLAINTIFF RUSSELL KEEN V. ALL DEFENDANTS

226.    Plaintiff incorporates herein by reference all preceding paragraphs of this complaint as if fully set forth hereinafter.

227.    Plaintiff, Russell Keen, is the husband of plaintiff, Janette Keen, and as such, is entitled to her society, companionship and services.

228.    By reason of the defendants' carelessness, negligence and other liability producing conduct, the husband plaintiff, Russell Keen, has suffered the loss of consortium and has been deprived of his wife's love, companionship, comfort, affection, society, morale guidance, intellectual strength and physical assistance.

WHEREFORE, plaintiff, Russell Keen, claims of defendants, jointly and severally, and each of them, a sum in excess of $75,000 in compensatory damages

together with lawful interest, costs of suit, and delay damages, and brings this action to recover same.

## COUNT XXI – LOSS OF CONSORTIUM

### PLAINTIFF JANETTE KEEN V. ALL DEFENDANTS

229.    Plaintiff incorporates herein by reference all preceding paragraphs of this complaint as if fully set forth hereinafter.

230.    Plaintiff, Janette Keen, is the wife of plaintiff, Russell Keen, and as such, is entitled to his society, companionship and services.

231.    By reason of the defendants' carelessness, negligence and other liability producing conduct, the wife plaintiff, Janette Keen, has suffered the loss of consortium and has been deprived of her husband's love, companionship, comfort, affection, society, morale guidance, intellectual strength and physical assistance.

WHEREFORE, plaintiff, Janette Keen, claims of defendants, jointly and severally, and each of them, a sum in excess of $75,000 in compensatory damages together with lawful interest, costs of suit, and delay damages, and brings this action to recover same.

SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.

BY: _____
      ROBERT J. MONGELUZZI
      ANDREW R. DUFFY

Attorneys for Plaintiffs

Admitted Pro Hac Vice in the State Actions:

RONAI & RONAI, LLP
PETER I. RONAI
HOLLY OSTROV RONAI
34 Adee Street
Port Chester, NY 10573

Co-Counsel for Plaintiffs

## CERTIFICATION OF SERVICE

I, Robert J. Mongeluzzi, Esquire, Attorney for Plaintiffs, hereby certify that a true and correct copy of the foregoing Complaint, in connection with the above-captioned mater, was forwarded to the below counsel for record and parties by the below-noted method and on the below-noted date:

**(Via U.S. Regular Mail)**

John J. Snyder, Esquire
Mary Anne Capriotti, Esquire
Rawle & Henderson, LLP
1339 Chestnut Street
One South Penn Square
Weidner Building, 16th Floor
Philadelphia, PA 19107
***Attorney for Duck Boat defendants***

Sean Kirby, Deputy City Solicitor
City of Philadelphia, Law Dept.
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5380
***Attorney for Defendant City of Philadelphia***

George R. Zacharkow, Esquire
Stephen J. Galati, Esquire
Mattioni Counselors at Law
399 Market Street, Suite 200
Philadelphia, PA 19106
***Attorney for K-Sea Transportation Partners, L. P.***

SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.

BY: _____

ROBERT J. MONGELUZZI
ANDREW R. DUFFY

Attorneys for Plaintiffs

Admitted Pro Hac Vice in State Court Actions:

RONAI & RONAI, LLP
PETER I. RONAI
HOLLY OSTROV RONAI
34 Adee Street
Port Chester, NY 10573

Co-Counsel for Plaintiffs

Date:  10-18-10